The order below is hereby signed.

Signed: March 26 2021



Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:** | **Case No. 20-00419-ELG** |
| **Delores Angela Berry,** **Debtor.** | **Chapter 7** |

**MEMORANDUM DECISION ON THE U.S. TRUSTEE'S MOTION FOR AN ORDER TO DISGORGE FEES AND IMPOSE FINE ON BANKRUPTCY PETITION PREPARER**

John P. Fitzgerald, III, Acting United States Trustee for Region Four (the "**U.S. Trustee**"), by counsel, filed a *Motion to Disgorge Fees and Impose Fines on Bankruptcy Petition Preparer for Violations of 11 U.S.C. § 110* (ECF No. 37) (the "**Motion**"), pursuant to 28 U.S.C. § 586 and 11 U.S.C. §§ 110 and 307,[1] seeking entry of a fine and sanctions against bankruptcy petition preparer Kevin Cobb ("**Mr. Cobb**"). Specifically, the U.S. Trustee requests entry of an order requiring Mr. Cobb to: (1) disgorge the $100.00 fee he received from Delores Angela Berry (the "**Debtor**"), pursuant to § 110(h)(3)(B), and (2) pay a fine of $250.00 for his alleged violations of § 110(e)(2)(A), pursuant to § 110(*l*).

The Court conducted an evidentiary hearing on the Motion to Disgorge Fees (the "**Hearing**") on January 21, 2021. At the Hearing, the Court heard testimony from the Debtor and

[1] The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532. All section references herein shall be to the Bankruptcy Code unless specifically indicated otherwise.

Mr. Cobb, and admitted many of the Debtor's filings into evidence.[2] The Court notes, however, that the testimony and exhibits presented during the Hearing at times ranged from imprecise to clearly contradictory.

Notwithstanding the evidentiary shortcomings, the Court finds that there is more than sufficient evidence that Mr. Cobb violated the requirements for a Bankruptcy Petition Preparer under § 110. For the following reasons, the Court will: (1) grant the U.S. Trustee's request that Mr. Cobb disgorge $100.00 to the Debtor, and (2) grant, in part, the request for Mr. Cobb to pay a fine for his violations pursuant to § 110(*l*) of the Bankruptcy Code, ordering Mr. Cobb to pay a fine of $100.00.

## I. Facts

At some point pre-petition, the Debtor researched bankruptcy online[3] and determined she wanted to file for bankruptcy relief. Upon a relative's referral to someone to assist her in preparing her case, the Debtor contacted Mr. Cobb to help her prepare the forms she filed with this Court. *See* Mot. Hr'g Tr. 15, ECF No. 41. Accordingly, the Debtor met with Mr. Cobb at some point pre-petition, but she was unable to recall the exact date of that meeting. *Id.* at 16. The Debtor and Mr. Cobb agreed, however, that Mr. Cobb provided the Debtor with a packet of blank bankruptcy petition paperwork (the "**Paperwork**") for her to complete in order for him to prepare her petition.

[2] Specifically, the Court admitted the Debtor's: (1) petition (ECF No. 1); (2) official schedules (ECF No. 5); (3) statement of financial affairs (ECF No. 6); (4) means test (ECF No. 9); (5) statement of current monthly income (ECF No. 8). In addition, the Court admitted letters written by the Debtor and Mr. Cobb submitted by the Debtor to U.S. Trustee in response to its motion presently before the Court (ECF No. 38).

[3] The Debtor routinely referred to having "googled" for information, *see, e.g.*, Mot. Hr'g Tr. 11, 21, but it is not clear what websites or references she reached from the Google search engine.

*Id.* at 17, 18-19, 27, 38-39. Mr. Cobb also directed the Debtor to websites for online credit counseling and financial management courses. *Id.* at 28.

Although not determinative here, the Court questions how comprehensive the Paperwork was, because neither party thoroughly described its contents.[4] The record does show that the total packet was approximately 35 pages. *Id.* at 39. Likewise, it is unclear whether Mr. Cobb provided the Debtor with a hard copy of the Paperwork or sent it to her through electronic means. *See id*. at 27 (at a meeting), 38-39 ("typically . . . through e-mail, sometimes in person"). In either case, the Debtor was ultimately left to fill out the Paperwork in hard copy with handwritten information before sending it back to Mr. Cobb to prepare in electronic form. *See id.* at 19-20. As she had done before contacting Mr. Cobb, the Debtor claims to have again relied on internet searches to inform and assist her as she completed the Paperwork. *See, e.g.*, *id.* at 21-22.[5]

In addition to providing the Debtor the Paperwork and reviewing her forms, and central to the Court's ruling herein, Mr. Cobb advised the Debtor on various aspects of the bankruptcy process. Initially, the Debtor answered Mr. Cobb's "standard questions" to ensure she could file for bankruptcy.[6] At the Hearing, the Debtor testified as to how Mr. Cobb "educated" her about the differences between the different chapters of the Bankruptcy Code:

> [Mr. Cobb] said Chapter 7 is this and Chapter 13 is this, because I didn't know the differences [between the chapters of the Code]. . . . I looked at [the differences] . . . you can consolidate . . . and keep [certain assets], but you'll [have to] pay . . . . And I knew I couldn't do that. So basically, [Mr. Cobb] just told me the different

---

[4] For example, whether the Paperwork was customized for the Debtor or just a generic packet of forms. Mr. Cobb described it as comprising "the complete bankruptcy package starting with the means test and ending with the statement of intention, and all the schedules in between." *Id.* at 39.

[5] The Debtor did not, however, specify which websites she visited nor what information she sought. *Id.*

[6] *See id.* at 19:14-16 (citing questions such as her income and amount of debt).

> [options]. The same thing I Googled online is the same thing he explained to me, that's it.

*Id.* at 27:1-12 (cleaned up). *See also id.* at 24:2-5 (mentioning briefly how Mr. Cobb explained the differences between chapters 7, 11, and 13). Further, after the U.S. Trustee brought this matter before the Court, the Debtor—in a letter to the U.S. Trustee's office asking the U.S. Trustee to withdraw the instant motion—again stated that Mr. Cobb "educated" her about bankruptcy:

> I . . . made my own decision and did my own paper work [sic] regarding my bankruptcy. *The only thing Mr. Kevin Cobb did was educate me on what bankruptcy was*.

Debtor's Letter to the U.S. Trustee, ECF No. 38, Attach. 1 (emphasis added). *But see* Mr. Cobb's Letter to the U.S. Trustee, ECF No. 38, Attach. 2 (disputing allegations in U.S. Trustee's Motion). Although the record is not completely clear, Mr. Cobb may also have provided the Debtor with examples and explanations of Schedule C exemptions that she ultimately relied upon when filling out her own Schedule C. *See* Tr. 32:3-8. At trial, the Debtor ultimately acknowledged:

> *Maybe he did explain [the exemptions], maybe I forgot about that part*, but I did everything myself. It's not like he told me to put this or put that, I did it my own self [sic].

*Id.* at 32:9-15 (emphasis added).

While the exact contents of the parties' discussion(s) are disputed by the Debtor and Mr. Cobb, the subsequent facts are not. After whatever discussion(s) the parties had, the Debtor filled out all the Paperwork Mr. Cobb provided, and Mr. Cobb "reviewed it to make sure everything was filled in" and would not "get returned . . . or rejected." *Id.* at 26:2-6. Mr. Cobb then typed the Debtor's responses into an electronic version of the documents using Adobe Acrobat. *Id.* at 39:16-24. Mr. Cobb was adamant that he typed only the Debtor's handwritten responses into the official forms without modification, edits, or corrections. *Id.* at 40-41. Thereafter, the Debtor reviewed the

transcribed forms and filed the typed version of the Paperwork with this Court, initiating this case under chapter 7 of the Bankruptcy Code.

In initiating this case on October 9, 2020, along with her chapter 7 petition, the Debtor filed substantially all other required opening documents including, in relevant part: (1) Official Form 119 ("**Form 119**") (ECF No. 11) which designated Mr. Cobb as the Debtor's Bankruptcy Petition Preparer ("**BPP**"); and (2) a Disclosure of Compensation of Bankruptcy Petition Preparer (the "**Compensation Disclosure**") (ECF No. 12), which disclosed that Mr. Cobb received a pre-petition fee of $100.00 for his services as required by § 110(h)(2) & Federal Rule of Bankruptcy Procedure 2016(c). The Debtor's initial § 341 meeting of creditors was held on November 12, 2020, at which time the U.S. Trustee appeared, and asked the Debtor to explain the services Mr. Cobb provided. *See* Motion at ¶¶ 7-12. Based upon the Debtor's responses, the U.S. Trustee filed the instant Motion. *See id.*

As set forth in the Motion, three components of the Debtor's filings triggered the scrutiny of the U.S. Trustee with respect to the services provided by Mr. Cobb, specifically whether they violated the restrictions placed on bankruptcy petition preparers by the Bankruptcy Code. First, in her Schedule C, the Debtor listed with 100 percent accuracy, specific dollar amounts and Code selections under the federal exemptions found in § 522. In Schedule C the Debtor listed nineteen unique assets exempted pursuant to four distinct subsections of the Code. *See* Debtor's Schedules (ECF No. 5) at 13-15. Second, in her Schedule A/B, the Debtor included specific values for property which were exempted in her Schedule C. *See generally id.* at 3-12. And third, the overall general completeness, thoroughness, and accuracy of the Debtor's *pro se* filings as compared to those typically submitted by *pro se* parties.

## II. Analysis

Section 110 defines a bankruptcy petition preparer as "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." § 110(a)(1). Section 110 goes on to establish the requirements that all BPPs must meet when assisting potential bankruptcy debtors, *see* § 110(b)-(d), (h)(2), and sets forth the limits on the services BPPs may provide. *See* § 110(e)-(g). In this case, the relevant restriction is the prohibition against BPP's providing legal advice, specifically: "[a] bankruptcy petition preparer may not offer a potential bankruptcy debtor *any legal advice, including any legal advice described in* [§ 110(e)(2)(B).]" § 110(e)(2)(A) (emphasis added). Such prohibited "legal advice" includes "advising the debtor . . . whether . . . commencing a case under chapter 7, 11, 12, or 13 is appropriate," § 110(e)(2)(B)(i)(II), as well as "how to characterize the nature of the debtor's interests in property," § 110(e)(2)(B)(v).

### A. Violations of 11 U.S.C. § 110

The 2005 enactment of § 110(e)(2) has clarified that the prohibition against offering legal advice, as imposed by that provision, does not encompass the identical set of services that may be within the typically larger set of services considered to be the unauthorized practice of law under state law, though many times legal advice also constitutes the unauthorized practice of law. *See Wynns v. Adams*, 426 B.R. 457, 462-63 (E.D.N.Y. 2010); *U.S. Tr. v. Burton* (*In re Rosario*), 493 B.R. 292, 331 (Bankr. D. Mass. 2013) (discussing the 2005 enactment of § 110(e)(2)). The Court need not reach whether Mr. Cobb's services constitute the unauthorized practice of law within the District of Columbia in order to determine whether he violated § 110. But cases considering

unauthorized practice of law are instructive when considering a BPP's violation of § 110 for providing legal advice.

With respect to cases filed with the assistance of a BPP, the Code requires that the *debtor* must be the one to independently determine (i) under which chapter to file her petition, (ii) what property to claim as exempt, and (iii) to what extent and under which authority to exempt such property. See *In re Guttierez*, 248 B.R. 287, 296 (Bankr. W.D. Tex. 2000) (describing "selecting how creditors would be treated and advis[ing] the debtor regarding what exemptions to claim and under which chapter to file" as examples of "legal advice"); *In re Moore*, 232 B.R. 1, 8 (Bankr. D. Me. 1999) (listing selection of exemptions as "legal advice"); c*f. In re Moffett*, 263 B.R. 805, 814 (W.D. Ky. 2001) ("[A]dvising clients about exemptions, or determining which exemptions apply to a client's property, is the unauthorized practice of law."); *In re Kaitangian*, 218 B.R. 102, 110-13 (Bankr. S.D. Cal. 1998) (analyzing actions found to be unauthorized practice of law); *In re Gabrielson*, 217 B.R. 819, 826-27 (Bankr. D. Ariz. 1998) (giving examples of legal advice constituting unauthorized practice of law). A BPP's role in "preparing" petitions is essentially limited to clerical support in preparing documents or forms selected by a debtor in accordance with the debtor's instructions. *See U.S. Tr. v. Tank (In re Stacy)*, 193 B.R. 31, 39 (Bankr. D. Or. 1996) (characterizing guidance as to which forms to use or how to complete them as being legal advice); *In re McDaniel*, 232 B.R. 674, 679 (Bankr. N.D. Tex. 1999) (contrasting actions that are the provision of information with those that are provision of legal advice). Anything beyond rote transcription or other scrivener services of a debtor's *independent* elections likely constitutes providing legal advice. *Guttierez*, 248 B.R. at 297-98 ("Section 110 . . . effectively restrict[s] 'petition preparers' to rendering only 'scrivening/typing' services."); *id.* at 298 ("Said another way,

§ 110 allows bankruptcy petition preparers to type information that debtors themselves have expressly and unequivocally indicated should be entered on each section of the bankruptcy petition, schedules, or any other bankruptcy document.”). *See also Moffett*, 263 B.R. at 815 (holding that the BPP was “*only* authorized to type information exactly as provided by potential debtors, without any assistance from her regarding exemptions.”).

Thus while a debtor may find the clerical support provided by a BPP to be helpful, § 110 makes clear that a BPP’s services in bankruptcy are not analogous to those provided to a taxpayer by an income tax preparer who generally not only transcribes an individual’s information, but provides advice and guidance on how to complete the same accurately. *See In re Boyce*, 317 B.R. 165, 174 (Bankr. D. Utah 2004) (describing the far more substantive role of an income tax preparer in determining how to complete a client’s tax forms consistent with complex tax laws). Said otherwise, a BPP is not an inexpensive replacement for counsel. As clearly explained by the United States Bankruptcy Court for the Eastern District of Virginia:

> Congress explained that its purpose in enacting § 110 was *not* to authorize a new profession, but rather to provide a remedy against a growing number of non-attorneys who were rendering quasi-legal (and legal) services in bankruptcy cases to the detriment of both the bankruptcy system and the consuming public. Indeed, the House Judiciary Committee’s Report made clear what Congress’ intentions were in enacting § 110:
>
>> Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. *While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors.* These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

*McDow v. Skinner* (*In re* Jay), 446 B.R. 227, 238 (E.D. Va. 2010) (quoting H.R. Rep. No. 103-835, at 56 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3365. *Accord In re Guttierez*, 248 B.R. 287, 295 (Bankr. W.D. Tex. 2000) ("Congress was also concerned that debtors would be at the mercy of fly-by-night 'typing mills' that would lull the unsuspecting public into thinking that they had the expertise to offer valuable legal (or at least quasi-legal) bankruptcy assistance."). The legal decisions incorporated in a debtor's bankruptcy filings can have serious, real-world consequences. *See Guttierez*, 248 B.R. at 296 n.23 ("A debtor who chooses chapter 7 may well lose her house as a result. A debtor who chooses chapter 13, but who cannot thereafter propose a confirmable plan may lose her house, her car, and the chance to correct the errors."). Section 110(e)(2) does not permit a BPP to counsel a pro se debtor in making these decisions, and § 110(b)(2) further requires a BPP to proactively manage a pro se debtor's expectations as to the scope of the BPP's permissible services. *See In re Hennerman*, 351 B.R. 143, 150 (Bankr. D. Colo. 2006).

Although Mr. Cobb asserted that he advised the Debtor he was not an attorney and could not give the Debtor legal advice, *see* Mr. Cobb's Letter to the U.S. Trustee (ECF No. 38, Attach. 2), the Court must consider the totality of the circumstances and all facts to determine if Mr. Cobb's interactions with the Debtor did amount to providing the Debtor legal advice. As an initial matter, the Court finds that Mr. Cobb met each of § 110 procedural filing requirements of a BPP including filing the Form 119 and the Compensation Disclosure. *See generally* § 110(b)-(d), (h)(2). However, at a minimum, Mr. Cobb's services violated the § 110 restrictions on BPPs when he: (1) educated and explained to the Debtor the differences between chapters 7, 11, and 13 and (2) explained Schedule C exemptions to the Debtor.

These conclusions are supported by the Debtor's own testimony. At the hearing, and despite her impeccable filings with specific code references in this case, the Debtor testified that "I don't know anything about codes or anything." Tr. at 11:10-11. This calls into question the veracity of the Debtor's testimony suggesting that the only information the Debtor used to complete her filings came from her independent, online research. *See id.* The Debtor further testified that Mr. Cobb explained the differences among chapters 7, 11, and 13 of the Bankruptcy Code. Tr. at 24:2-16, 27:1-12. The Court finds that there is no other reasonable interpretation of the conflicting evidence other than that Mr. Cobb provided the Debtor with legal advice as to differences in filing under chapter 7, 11, and 13 of the Code, as well as on her exemptions. Even if the Court were to find that Mr. Cobb's actions were helpful, as the Debtor suggests, *see generally* Debtor's Letter to the U.S. Trustee (ECF No. 38, Attach. 1), it nevertheless constitutes impermissible legal advice under § 110(e)(2). In light of the Court's findings, the Court concludes that Mr. Cobb violated § 110(e)(2)(B)(i) when he explained the chapters of the Code, and § 110(e)(2)(B)(vi) and (vii) when he explained exemptions to the Debtor.

Of further concern to the Court is that, despite the clear admonition to not give legal advice and the evidence to the contrary and Mr. Cobb's recognition of that limitation at the Hearing (Tr. at 39:8-9) and in his written submissions to the Court, Mr. Cobb did not recognize or otherwise show any understanding that his explanations and education crossed the line from authorized BPP services to unauthorized legal advice. Having found that Mr. Cobb failed to comply with § 110(e), the Court must now determine what sanctions, if any, against Mr. Cobb are appropriate in this case.

B. Sanctions

The U.S. Trustee has specifically requested only two sanctions under § 110: disgorgement of fees pursuant § 110(h)(3)(B) and a fine to be paid to the Office of the United States Trustee as set forth in § 110(*l*)(1). Thus, the Court will limit its consideration of sanctions against Mr. Cobb to those sections.

*(1) Disgorgement Pursuant to § 110(h)(3)(B)*

The Court first considers the U.S. Trustee's request for disgorgement pursuant to § 110(h)(3)(B). Disgorgement is appropriate in any case "in which the bankruptcy petition preparer fails to comply with [11 U.S.C. § 110.]" 11 U.S.C. § 110(h)(3)(B). While disgorgement under § 110(h)(3)(b) is discretionary, the subsection applies to *all fees*—not just those fees earned for improper services. *Cf. Schroeder v. Stewart (In re Schroeder)*, No. 19-bk-29498, 2021 Bankr. LEXIS 113, at ¶ 53 (Bankr. N.D. Ill. Jan. 19, 2021); *In re Bennett*, No. 18-10346, 2019 WL 4686327, at *14-15 (Bankr. D. Vt. Sept. 25, 2019). *But see Evans*, 413 B.R. at 328-29. In light of the advice provided by Mr. Cobb to the Debtor regarding the differences between chapters 7, 11, and 13, the assistance provided to the Debtor regarding exemptions, and the totality of the circumstances of the case, the Court finds that disgorgement of Mr. Cobb's entire $100.00 fee is warranted.

*(2) Fine Pursuant to §110(*l*)(1)*

In addition to disgorgement, the Court has the discretion to fine a BPP up to $500.00 for *each* time a BPP violates § 110. *See Bennett*, 2019 Bankr. LEXIS at *15 (citing § 110(*l*)(1)). Accordingly, a BPP could be subject to a $500.00 fine for "each piece of legal advice" they provide to a debtor. *See Bennett*, 2019 Bankr. LEXIS at *15 (citing *In re Johnson*, 2012 Bankr. LEXIS

1816, *4-5 (Bankr. E.D.N.C. Apr. 25, 2012)). However, courts have also noted that a series of statutory fines "might fairly be viewed as piling on." *See, e.g.*, *Evans*, 413 B.R. at 330 (imposing two separate fines totaling $400.00). Because the U.S. Trustee only seeks a single $250.00 fine, the Court limits its analysis to a single fine without considering or deciding whether each of Mr. Cobb's actions individually could result in a separate fine under § 110(*l*)(1) fine. However, upon a consideration of the evidence, the testimony at the Hearing, the lack of any cognizable detriment to the Debtor as a result of Mr. Cobb's actions, there being no allegations of routine or serial violations by Mr. Cobb, combined with the lack of contrition or acknowledgement by Mr. Cobb that his actions were violative, and based upon the totality of the circumstances, the Court finds that fine of $100.00 is warranted in this case.

## III Conclusion

Bankruptcy petition preparers engage in a business which requires them to walk the narrow path provided by Congress in § 110, one that is likely difficult to follow when faced with a desperate client in need of advice. However, as in this case, even when there is no identifiable harm to a debtor, the restrictions in the Code are clear: BPPs cannot provide legal advice. This Court cannot, and will not, excuse a violation of the Code by a BPP who clearly goes beyond the bounds of the statue regardless of the underlying results obtained by the debtor.

For all the foregoing reasons, the Court will enter an order granting the U.S. Trustee's Motion in part. Mr. Cobb will be ordered to timely pay to the U.S. Trustee (a) the amount of the disgorged fees in certified funds made payable to the debtor; and (b) the fines assessed under § 110(*l*)(1).